205 Cal.App.3d 1235 (1988)
252 Cal. Rptr. 902
In re ASHLEY G., a Minor.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Petitioner and Respondent,
v.
DEBBIE V., Objector and Appellant.
Docket No. F009332.
Court of Appeals of California, Fifth District.
November 14, 1988.
*1236 COUNSEL
Marsha Perkes, under appointment by the Court of Appeal, for Objector and Appellant.
B.C. Barmann, County Counsel, and Margo Raison, Deputy County Counsel, for Petitioner and Respondent.
Richard B. Barron, under appointment by the Court of Appeal, for Minor.
OPINION
HAMLIN, J.
Debbie V. appeals from the judgment declaring her three-year-old daughter, Ashley G., free from her custody and control under Civil *1237 Code section 232, subdivisions (a)(3) and (a)(7).[1] Appellant contends there was not sufficient evidence to establish that: (1) she is disabled as the result of habitual use of a controlled substance as required by section 232, subdivision (a)(3); or (2) she has failed and is likely to fail in the future to maintain an adequate parental relationship with Ashley G. Our review persuades us there is substantial evidence to support the juvenile court's finding that appellant is disabled as a result of habitual use of phencyclidine (PCP); we will therefore affirm the judgment.

FACTS
Appellant gave birth to Ashley G. on October 10, 1984. Two weeks later she was arrested on an outstanding warrant issued because she failed to complete the drug diversion program to which she was sent following her arrest in 1984 for being under the influence of PCP. When appellant was arrested, Ashley was placed in a foster home. On December 12, 1984, Ashley was declared a dependent child of the Kern County Juvenile Court. Ashley has remained in foster care since appellant's October arrest.
A family reunification plan was drawn up and signed by appellant in January of 1985. The plan had two relevant requirements. First, appellant was required to submit to and receive three consecutive clean drug tests prior to consideration of return of the minor. Second, appellant was to engage in appropriate drug counseling and receive a positive evaluation.
According to appellant's original caseworker, Gale Meyer, appellant was anxious to do whatever was possible to effect reunification. Although she did not choose to attend the two drug programs recommended by the court, she signed up for counseling right away.
Appellant was tested in March, April and May of 1985 for drugs. Each test came back positive for the presence of PCP in appellant's system. When confronted with the results of the tests, appellant denied using drugs and said she did not understand why the tests were positive. In June and July of 1985 appellant refused to test; she was afraid the tests would be "dirty" and wanted to give herself a chance to clean out. Appellant continued to either test positive for PCP, refuse to test, or miss her appointments for tests through July of 1986. Jan Hendricks, a social worker in the adoption unit, felt that appellant should be self-motivated and she no longer requested appellant to submit to tests.
*1238 Appellant continued to deny that she used drugs and she discontinued counseling.
Appellant had monthly visits with Ashley, missing only occasionally. Although appellant acted appropriately during these visits, Ashley had bonded to her foster parents and often cried for a significant period of time.
All of the social workers who had contact with appellant said she never appeared to be intoxicated; the contacts included a few unannounced visits to her home. On one occasion appellant had missed a visit with Ashley. She became very angry and was screaming, kicking, hitting doors and running off. On another occasion, appellant said she was going to have to kidnap Ashley. Appellant would at times forget scheduled appointments. On January 17, 1987, appellant was arrested for and pleaded guilty to being under the influence of PCP. She denied use on this occasion and stated she was in the car with three other individuals who were using PCP.
Because appellant had no clean tests, the case was turned over to the adoption unit. Ashley was adoptable, and her foster parents, with whom she had lived continuously since she was two weeks old, wished to adopt her.
Dr. David Bird, a psychologist, testified that the use of PCP can result in a reduction of mental awareness and skills; can cause a person to run the emotional gamut from euphoria to depression; and can cause a loss of reference to time, delusions of grandeur, amnesia and forgetfulness. All of these symptoms represent an immediate danger to any child supervised by the substance abusing person. The danger would be present during usage and up to two days following usage. Dr. Bird also testified that PCP could be taken in passively through touch and sidestream smoke.
Lawrence Borgsdorf, a clinical pharmacist, testified that PCP stays in the body longer than most drugs, but not more than 30 days. A positive test, conducted under the circumstances of appellant's tests, clearly indicates that the individual has ingested a significant amount of PCP on more than one occasion. It was very unlikely that casual contact could produce enough PCP in one's system to test positive. A person can show normal behavior and still have positive tests.
Following the testimony of the experts, appellant returned to the stand and testified that her boyfriend smoked PCP cigarettes in her presence on the average of three times a day every other day. She lived with him from the beginning of the testing until the end of the testing.
After reviewing the evidence the court found as follows: "1. The minor, Ashley Marie [G.], has been a dependent child of the Juvenile Court for more than one year.
*1239 "2. That the mother, Debbie [V.], has been deprived of custody of the child for over one year.
"3. That the mother, Debbie [V.], suffers from a disability because of the habitual use of controlled substances.
"This finding is based upon the clear and convincing evidence [sic] that during a period of over one year the mother [sic] never had a clean drug test, refused to take blood tests on occasions when asked and, in the year since the last test, has plead [sic] guilty to being under the influence of P.C.P. and has failed to produce even one clean test.
"Further, the job of parenting is one that requires the full time effort. Thus, being under the influence both mentally and physically incapacitates the mother during those periods and renders her unable to provide adequate care and control.
"Therefore, the minor is one who falls within the definition of C.C.P. [sic] section 232(a)(3)."

DISCUSSION
Section 232, subdivision (a)(3) provides: "(a) An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his or her parents when the child comes within any of the following descriptions:
".... .... .... .... ....
"(3) Whose parent or parents suffer a disability because of the habitual use of alcohol, or any of the controlled substances specified in Schedules I to V, inclusive, of Division 10 (commencing with Section 11000) of the Health and Safety Code, except when these controlled substances are used as part of a medically prescribed plan, or are morally depraved, if the child has been a dependent child of the juvenile court, and the parent or parents have been deprived of the child's custody continuously for one year immediately prior to the filing of a petition pursuant to this section. As used in this subdivision, `disability' means any physical or mental incapacity which renders the parent or parents unable to adequately care for and control the child. Physical custody by the parent or parents for insubstantial periods of time shall not interrupt the running of the one-year period."
(1a) Appellant contends, and we agree, that this subdivision requires two findings: (1) that the mother habitually uses a controlled substance, and *1240 (2) that the mother is disabled as the result of the use. (2a) Appellant then argues that Dr. Bird's testimony about the general ability of a PCP user to parent was not sufficient evidence to establish that she was disabled, especially in light of the testimony that others never saw her in an impaired state.
This court's task "is not to reweigh the evidence or to express an independent judgment thereon but merely to decide whether there is sufficient evidence to support the findings of the trial court." (In re Laura F. (1983) 33 Cal.3d 826, 833 [191 Cal. Rptr. 464, 662 P.2d 922].)
(3) In In re Angelia P. (1981) 28 Cal.3d 908, 919 [171 Cal. Rptr. 637, 623 P.2d 198], the court explained the nature of the findings required under section 232 as follows: "[F]indings under any subdivision of section 232 must be made on the basis of clear and convincing evidence. Such a test is fully consistent with the goal of section 232 to provide `the fullest opportunity to the parents for exercise of their rights not inconsistent with the ultimate best interests of the child' (In re Carmaleta B. [(1978)] 21 Cal.3d [482, 492 (146 Cal. Rptr. 623, 579 P.2d 514)]), and in harmony with the purposes delineated by the United States Supreme Court's statement in Addington v. Texas (1979) 441 U.S. 418, 423 ... that: `The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." In re Winship, 397 U.S. 358, 370 [25 L.Ed.2d 368, 90 S.Ct. 1068] (1970) (Harlan, J. concurring.). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.'"
(2b) Clearly there is substantial evidence to support the finding that appellant habitually used a controlled substance, PCP. The question is what kind of proof is required to show that appellant was disabled by her use and was unable to adequately care for and control her child. (1b) The section requires a nexus between the abuse and the ability to parent. Otherwise, the statute would simply provide that parental rights of drug addicts be terminated.[2]
In In re Solomon L. (1987) 190 Cal. App.3d 1106 [236 Cal. Rptr. 2], appellant had a continuous pattern of cocaine and heroin use. The trial court terminated her parental rights pursuant to section 232, subdivision *1241 (a)(3) because she was "`hopelessly addicted to drugs.'" (Id. at p. 1113.) Appellant challenged the sufficiency of the evidence as to this finding. The appellate court upheld the finding: "Brenda admitted the circumstances of drug abuse which led to the initial removal of Solomon from her custody. She also concedes a continued inability to overcome her addiction either on her own, or with the aid of various rehabilitation programs. There was ample solid and credible evidence upon which the court below reasonably rested its decision." (Ibid.)
Similarly, the appellant in In re Shannon W. (1977) 69 Cal. App.3d 956 [138 Cal. Rptr. 432] challenged the sufficiency of the evidence to support termination of her parental rights pursuant to section 232, subdivision (a)(3). Appellant, "did not dispute that she had had a drinking problem in the past. She claimed, however, that she had been receiving therapy since January 1975 and, except for `a couple of beers about two weeks ago playing horsehoes [sic],' had been `sober all the time.' She claimed that her problems had been `worse than drinking.' They had been `fearfulness and mental hallucinations' which she was finally getting to understand.
"There was, however, considerable evidence that appellant was still drinking to excess. The paternal grandparents of the oldest child had engaged the services of a private detective who observed appellant on a number of week-ends. On August 1, 1975, nothing more was established than that one Collins, who appeared to be drunk, brought what may have been a six-pack of beer to appellant's residence. On September 11, however, appellant  again in the company of Collins  was herself observed `unsteady on her feet ... staggering.' She was carrying a beer can. Collins was observed purchasing additional beer and driving with appellant to an address on Ohio Street. At the Ohio Street residence, an apartment, appellant participated in a party which became loud and boisterous as the evening progressed. She was seen drinking beer. Appellant and Collins did not leave the Ohio Street occasion until the next morning.
"The operative made several other observations of appellant which, though far from conclusive, strongly suggest in conjunction with his other observations, that her social life was still alcohol-oriented.
"The most damning evidence, however, was given by Mr. and Mrs. Raggio, who occupied the apartment below the one on Ohio Street where the private detective had made his observation. Mr. Raggio testified that he had seen appellant intoxicated on `numerous occasions' since the latter part of August 1975. Whenever appellant arrived `you can tell just the way she is dressed, looks, acts, that she's had a few before....' Mr. Raggio was corroborated by his wife who testified that she had seen appellant drunk *1242 about seven or eight times. A couple of times she had seen appellant fall down or stumble when she appeared to be intoxicated." (69 Cal. App.3d at pp. 964-965.)
The appellate court found there was sufficient evidence to support the trial court's order terminating her parental rights.
"No one would suggest that a mother should be permanently deprived of her children because she has been intoxicated seven or eight or even seventy or eighty times in her life. It is in the context of appellant's past problems with alcohol and her claim that she had solved them, that the evidence of the investigator and of Mr. and Mrs. Raggio assumes significance. We do not suggest that the trial court could or did base a finding of `disability because of the habitual use of alcohol' on appellant's denials. The evidence shows affirmatively that alcohol still played an important part in appellant's life. More importantly, however, the trial court was permitted to find that appellant was subjectively sincere in claiming that she no longer had a problem, but lacked the insight to realize that, objectively, this simply was not so. The facts amply support the finding of the court under section 232, subdivision (a)(3)." (In re Shannon W., supra, 69 Cal. App.3d at p. 965.)
(2c) Here, the positive tests of appellant for PCP provided ample support for a finding that she continuously used PCP for a substantial period of time. This, in addition to her recent conviction for being under the influence of PCP, indicated that PCP played an important role in appellant's life. Dr. Bird testified that the use of PCP would pose an immediate danger to any child supervised by such a substance abusing person.
Although drug abuse does not always result in a disability that requires termination of parental rights, we cannot properly ignore the peculiar characteristics of the drug that appellant abused.
PCP is an illicit drug used only for its mind-altering effects. "Low doses cause loss of inhibition. Higher doses produce an excited, confused intoxication which can include any of the following: muscle rigidity, loss of concentration and memory, visual disturbances, delirium, feelings of isolation and paranoia, convulsions, speech impairment, violent behavior, fear of death, and changes in body perception." (Levy, Managing the Drugs in Your Life: A Personal and Family Guide to the Responsible Use of Drugs, Alcohol, Medicine (1983).) This drug is quite volatile and can affect different users in vastly disparate ways ranging from withdrawal to severe agitation. Even experienced users cannot be certain how it will affect them each time. (Ibid.) PCP is cheap to buy and easy to make. (Ibid.)
"An increasing number of young people appearing violent, bizarre, unresponsive, extremely confused, or acutely psychotic are being seen in local *1243 emergency rooms. With increased use of PCP, an upsurge in violent crimes that culminate in homicide is observed." (Phencyclidine (PCP) Abuse: An Appraisal, National Institute on Drug Abuse research monograph No. 21 (Aug. 1978) p. 90.) Users of PCP may exhibit unpredictable bizarre or violent behavior when under its influence. (Ibid.)
PCP is an unpredictable drug. Appellant's monthly blood tests indicating she continued to abuse PCP, combined with Dr. Bird's testimony that any child under the supervision of a PCP abusing adult is in danger and the danger remains for up to two days after use, is substantial evidence to meet the requirements of section 232, subdivision (a)(3). Appellant here demonstrated a continual pattern of abuse making her disabled to care on a continuous basis for her minor child, Ashley. In addition, other than monthly visits, Ashley has had no significant contact with appellant. She has bonded to her foster parents and they wish to adopt her. She is now four years old. Her best interests would point to a resolution where she can be adopted by those people who have acted as her only parents.
Since appellant's challenge to the juvenile court's finding that Ashley should be declared free from the custody and control of appellant under subdivision (a)(3) of section 232 fails, it is unnecessary to discuss appellant's challenge to the court's finding under subdivision (a)(7).
We affirm the judgment.
Woolpert, Acting P.J., and Martin, J., concurred.
NOTES
[1] Further statutory references are to the Civil Code.
[2] Before 1973, then subdivision (c) merely provided "habitual intemperance" was a ground for termination.