[No. A128626. First Dist., Div. Five. Dec. 10, 2010.]

In re ALLISON J., a Person Coming Under the Juvenile Court Law.
SAN FRANCISCO HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
JEREMIAH J., Defendant and Appellant.

**COUNSEL**

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Dennis J. Herrera, City Attorney, Kimiko Burton and Jennifer Williams, Deputy City Attorneys, for Plaintiff and Respondent.

**OPINION**

**JONES, P. J.**—The juvenile court denied Jeremiah J. (father) reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(12) (section 361.5(b)(12)), which allows a court to bypass reunification services where a parent has committed a "violent felony" within the meaning of Penal Code section 667.5, subdivision (c).[1] On appeal, father contends section 361.5(b)(12) is "unconstitutional because it does not require a nexus between the criminal conduct and the ability to parent." Specifically, father contends section 361.5(b)(12) violates his substantive due process rights.

We affirm. We conclude section 361.5(b)(12) satisfies the requirements of substantive due process when considered in connection with section 361.5, subdivision (c).

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code. Section 361.5(b)(12) states: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] . . . That the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." Maria G. (mother) is not a party to this appeal and is mentioned only where relevant to the issues raised in father's appeal. (*In re V.F.* (2007) 157 Cal.App.4th 962, 966, fn. 2 [69 Cal.Rptr.3d 159], superseded by statute on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57–58 [81 Cal.Rptr.3d 918].)

## FACTUAL AND PROCEDURAL BACKGROUND

Allison J. was born in November 2008. In August 2009, the San Francisco Human Services Agency (Agency) filed a section 300 petition alleging mother's mental health and substance abuse problems prevented her from caring for Allison. The petition also alleged father was a registered sex offender who had a criminal record and who could not protect Allison from mother. (§ 300, subds. (b), (g).) In an amended petition filed in September 2009, the Agency alleged mother and father engaged in domestic violence in violation of a restraining order requiring father to stay away from mother. The court detained Allison.

In its disposition report, the Agency reported that father was a registered sex offender "due to fondling a minor who was mentally delayed" when father lived in Florida. According to the report, father had been convicted of possession of a controlled substance and possession of a controlled substance for sale in 2000 (Health & Saf. Code, §§ 11377, 11379) and second degree robbery in 2005 and again in 2006 (Pen. Code, §§ 211, 212.5). The report indicated that father admitted he used methamphetamine until "the Lord Jesus saved him" but "denie[d] all of the allegations." The Agency noted father was living in a homeless shelter and was on parole until October 2010 for robbery. One restriction of father's parole prohibited him from having "contact with any minors" except supervised contact with Allison.

In an addendum report, the Agency recommended that the court bypass reunification services for father pursuant to section 361.5(b)(12) because of father's robbery convictions and because of his "extensive criminal history dating back to 1997, when he was required to register as a sex offender." The addendum report noted father had various misdemeanor convictions for cruelty to animals (Pen. Code, § 597), burglary (Pen. Code, § 459) and forgery (Pen. Code, § 470) and attached proof of father's prior convictions.

The court held a contested jurisdiction and disposition hearing on February 18, 2010. The court determined Allison came within the provisions of section 300. During the disposition portion of the hearing, Allison's social worker, Larissa Rostran-Navarro, testified she recommended the court not provide reunification services for father because the Agency was concerned "about his violent pattern with his criminal behavior, and also [about] the history of domestic violence" between mother and father. When Rostran-Navarro discussed her concerns with father, he was "evasive" and said, " 'I already dealt with that with my attorney and all of that is not true.' " Father also blamed his roommate for the death of the cat that led to his animal cruelty conviction.

Rostran-Navarro explained that she was concerned about Allison's safety if father "does not get treatment and does not acknowledge that he had a DV situation. . . . [T]he mother reported to me that when she was pregnant the father pushed her down and she fell over on the floor. [¶] Also, she's reported that after she had the baby, [she and father] lived together for some time, and she was asking him for money for provisions for the baby . . . and he became so frustrated and upset that he grabbed a piece of paper and pushed it down her mouth to quiet her down. [¶] So my concern is lack of accepting, taking responsibility for his behavior." Rostran-Navarro stated father admitted he regularly violated the restraining order prohibiting him from contacting mother but failed to acknowledge it was a "problem" that he assaulted a developmentally delayed child in Florida.

According to Rostran-Navarro, Allison would not do well without appropriate parenting because she has "special needs" and is "developmentally delayed." Finally, Rostran-Navarro testified that father was loving toward Allison, appeared concerned about her welfare during supervised visits, and had been attending parenting classes and family therapy.

At the conclusion of the hearing, the commissioner followed the Agency's recommendation and declined to provide reunification services for father pursuant to section 361.5(b)(12). The commissioner found clear and convincing evidence there was a substantial danger to Allison's safety and well-being if she were returned home. The commissioner explained she was concerned about the "seriousness" of father's convictions, about father's lack of insight regarding the convictions, and about his "unwillingness to even discuss his part in those convictions." The commissioner commended father for having "good visits with [his] daughter," but noted that "having good visits . . . and being a good parent [are] far different."

Father filed an application for rehearing. The presiding judge denied the application, explaining that the Agency had established "beyond a reasonable doubt" that father had committed a violent felony within the meaning of Penal Code section 667.5, subdivision (c). The judge rejected father's argument that "there ought to be a nexus between the crime and the care of the child" and concluded the commissioner did not abuse her discretion by determining father did not establish that reunification services would be in Allison's best interests.

DISCUSSION

Father does not contend there is insufficient evidence to support the court's decision to bypass reunification services. Instead, father contends section

361.5(b)(12) violates his substantive due process rights because the statute does not require a nexus between his criminal history and his ability to parent. We review constitutional questions de novo. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183 [70 Cal.Rptr.3d 1].)

■ To place the issues in context, we first review the statutory scheme. "As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]" (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793] (*Baby Boy H.*); see *Mardardo F. v. Superior Court* (2008) 164 Cal.App.4th 481, 485 [78 Cal.Rptr.3d 884] (*Mardardo F.*).) Section 361.5, subdivision (b) sets forth certain exceptions—also called reunification bypass provisions—to this "general mandate of providing reunification services." (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 470 [78 Cal.Rptr.2d 110] (*Joshua M.*); see *Mardardo F., supra*, 164 Cal.App.4th at p. 485.)

Section 361.5, subdivision (b) "reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody." (*Joshua M., supra*, 66 Cal.App.4th at p. 470; see *Baby Boy H., supra*, 63 Cal.App.4th at p. 478 [in § 361.5, subd. (b), the Legislature "recognize[d] that it may be fruitless to provide reunification services under certain circumstances"].) When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be " 'an unwise use of governmental resources.' " (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 65 [18 Cal.Rptr.3d 504], quoting *Baby Boy H., supra*, 63 Cal.App.4th at p. 478.)

Section 361.5(b)(12) allows the court to bypass reunification services where the parent or guardian has been convicted of a "violent felony" within the meaning of Penal Code section 667.5, subdivision (c). (See *In re James C.* (2002) 104 Cal.App.4th 470, 485 [128 Cal.Rptr.2d 270] [denial of reunification services pursuant to § 361.5(b)(12) proper where father was convicted of two violent felonies, including robbery with firearm use]; Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2010) § 2.129[2][b][xii], p. 2-345.) Here, father was convicted of second degree robbery twice—in 2005 and again in 2006. Robbery is a "violent felony" pursuant to Penal Code section 667.5, subdivision (c)(9).

■ Father contends the court violated his substantive due process rights by using section 361.5(b)(12) to bypass reunification services "based solely

on his criminal history and without any nexus between that history and his ability to parent. . . ." " 'Substantive due process prohibits governmental interference with a person's fundamental right to life, liberty or property by unreasonable or arbitrary legislation. [Citation.] In substantive due process law, deprivation of a right is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation that is reasonably applied; that is, the law must have a reasonable and substantial relation to the object sought to be attained. [Citation.]' " (*Joshua M., supra,* 66 Cal.App.4th at p. 473, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 306–307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) To determine whether a statute comports with due process, the court must consider (1) "the private interests affected by the proceeding"; (2) "the risk of error created by the State's chosen procedure"; and (3) "the countervailing governmental interest supporting use of the challenged procedure." (*Santosky v. Kramer* (1982) 455 U.S. 745, 754 [71 L.Ed.2d 599, 102 S.Ct. 1388] (*Santosky*); see *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893].)

Other courts have considered—and rejected—due process challenges to section 361.5, subdivision (b). (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 750 & fn. 8 [110 Cal.Rptr.2d 828, 28 P.3d 876] (*Renee J.*)[2] [rejecting substantive due process challenge to § 361.5, subd. (b)(10); *Joshua M., supra,* 66 Cal.App.4th at p. 472 [§ 361.5, subd. (b) is "constitutional on its face" and comports with substantive due process]; *Baby Boy H., supra,* 63 Cal.App.4th at p. 478 [determining § 361.5, subd. (b)(10) "comports with the requirements of due process" and holding "the statute is constitutional"].)

For example, in *Renee J.* the California Supreme Court considered and rejected a similar challenge to section 361.5, subdivision (b)(10), which authorizes the denial of reunification services where the juvenile court terminated reunification services for the child's sibling because the parent failed to reunify with the sibling and did not subsequently make a reasonable effort to treat the problems that led to the sibling's removal. (*Renee J., supra,* 26 Cal.4th at p. 739.) There, the juvenile court bypassed reunification services at the dispositional hearing and the mother appealed, contending section 361.5, subdivision (b)(10) violated her substantive due process rights because it relied exclusively on the parent's "problematic history" rather than requiring proof of the "parent's current unfitness." (*Renee J., supra,* at pp. 750, 749, fn. & italics omitted.)

---

[2] Superseded by statute on another point as stated in *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1457 [118 Cal.Rptr.2d 118] and *City of West Hollywood v. 1112 Investment Co.* (2003) 105 Cal.App.4th 1134, 1147 [130 Cal.Rptr.2d 168].

Our high court disagreed. As an initial matter, the court held that the mother did not possess a "constitutionally protected liberty interest in the state's providing her with reunification services." (*Renee J., supra*, 26 Cal.4th at p. 750.) The court rejected the mother's argument "that reunification services constitute her only opportunity to reunify . . . and thus that a denial of services is tantamount to a slow termination of her rights" and concluded "the present state of the record does not enable . . . such a conclusion" because the mother could move to modify the juvenile court's previous orders pursuant to section 388. (*Renee J., supra*, 26 Cal.4th at p. 750.) The court noted that the mother's interests after the court had found jurisdiction but before the court terminated parental rights were "significant . . . [but] of a somewhat lesser order than in the decisions on which [the mother] and amicus curiae rely." (*Id.* at pp. 750–751, fn. 8.)

The *Renee J.* court also determined the government's interest in " 'preserving and promoting the welfare of the child, and the state's fiscal and administrative interest in reducing the cost and burden of such proceedings' " was "substantial." (*Renee J., supra*, 26 Cal.4th at pp. 750–751, fn. 8, quoting *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 255 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Finally, the court concluded that "given the weighty interests of the state in assuring the proper care and safety of children in the dependency system, and those of the children themselves, [section 361.5 subdivision (b)(10)] sufficiently diminishes the risk of erroneous deprivations of services as to satisfy the requirements of due process." (*Renee J., supra*, at pp. 750–751.)

With these principles in mind, we consider whether section 361.5(b)(12) comports with substantive due process. First, we consider the private interest affected. (*Santosky, supra*, 455 U.S. at p. 759.) Father contends his interest in reuniting with Allison is at its "highest point" at the dispositional hearing. Citing *In re R.H.* (2009) 170 Cal.App.4th 678 [88 Cal.Rptr.3d 650], father claims he has a "fundamental" interest in reuniting at the dispositional stage. Father's reliance on *In re R.H.* is misplaced. In that case, the court's use of the word "fundamental" applied to the termination of parental rights as distinguished from other custody determinations; the court noted that " 'parental status termination is "irretrievabl[y] destructi[ve]" of the most fundamental family relationship.' [Citation.]" (*Id.* at p. 705.) In contrast to *R.H.*, the termination of parental rights is not before us. We therefore disagree with father's assumption that he has a "fundamental" right to reunification services. Here, as in *Renee J.*, father does not have a constitutionally protected liberty interest in being provided with reunification services. (*Renee J., supra*, 26 Cal.4th at p. 750, fn. 8.)

■ Next we consider "the risk of error created by the State's chosen procedure." (*Santosky, supra*, 455 U.S. at p. 754.) Father claims the "risk of an erroneous deprivation of the fundamental right to parent . . . is very high" because an order bypassing services can become the basis of an order terminating parental rights. We are not persuaded. While an order bypassing services can lead to an order terminating parental rights, father may move to modify the juvenile court's order bypassing services pursuant to section 388. Or, as discussed *ante*, the court may order reunification services notwithstanding section 361.5(b)(12) if it finds by clear and convincing evidence that "reunification is in the best interest of the child." (§ 361.5, subd. (c).) Moreover, any risk of error is mitigated by father's right to counsel (§ 317, subd. (d)) and the fact that father's convictions were found "beyond a reasonable doubt."

■ Finally, we evaluate the governmental interest supporting the statutory procedure. (*Santosky, supra*, 455 U.S. at p. 766; *Cynthia D. v. Superior Court, supra*, 5 Cal.4th at pp. 255–256.) Like the *Renee J.* court, we conclude the state's " 'interest in preserving and promoting the welfare of the child, and the state's fiscal and administrative interest in reducing the cost and burden of such proceedings' [citation]—is substantial." (*Renee J., supra*, 26 Cal.4th at p. 751, fn. 8.) "[G]iven the weighty interests of the state in assuring the proper care and safety of children in the dependency system, and those of the children themselves, [section 361.5 subdivision (b)(12)] sufficiently diminishes the risk of erroneous deprivations of services as to satisfy the requirements of due process. [Citation.]" (*Renee J., supra*, at pp. 750–751.)

Father's complaint about the lack of a "nexus" between his convictions and his current ability to parent is identical to the argument rejected in *Renee J.* There, the California Supreme court explained that the bypass provision set forth in section 361.5, subdivision (b)(10) did not violate the mother's substantive due process rights by relying on the mother's "problematic history" rather than her "*current* unfitness" to parent. (*Renee J., supra*, 26 Cal.4th at p. 749, original italics.) The court explained that, pursuant to section 361.5, subdivision (c), "the juvenile court may still order reunification services if it finds, by clear and convincing evidence, that reunification is in the best interest of the child. (§ 361.5, subd. (c).) Thus, contrary to Renee's . . . substantive due process argument, evidence of a parent's current fitness may, in appropriate circumstances, persuade the juvenile court to order reunification services despite his or her problematic history." (*Renee J., supra*, at p. 750, fn. omitted.)

██ The same is true here. Section 361.5, subdivision (c) enables a parent to obtain reunification services notwithstanding section 361.5(b)(12) where the parent demonstrates reunification is in the child's best interest by offering evidence of, among other things, his or her current ability to parent. To determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1228 [78 Cal.Rptr.3d 91] (*William B*).) A best interest finding requires a likelihood reunification services will succeed; in other words, "some 'reasonable basis to conclude' that reunification is possible . . . ." (*William B., supra,* at pp. 1228–1229, citation omitted.)

Father seems to suggest he demonstrated reunification was in Allison's best interest because he was "in complete compliance with the requirements of his parole" and because he "exhibited good parenting skills" during supervised visits with Allison. We are not persuaded. Father ignores evidence that he regularly violated a restraining order prohibiting him from contacting mother, failed to accept responsibility for his criminal activity, and had an unstable housing arrangement. In addition to being convicted of two violent felonies, father had also been convicted of cruelty to animals, burglary, forgery, and assaulting a mentally delayed minor. There simply was not "clear and convincing evidence" that reunification was in Allison's best interest, or any evidence that reunification was "possible." (*William B., supra,* 163 Cal.App.4th at p. 1229.)

Father relies on two cases, *In re Ashley G.* (1988) 205 Cal.App.3d 1235, 1240 [252 Cal.Rptr. 902] (*Ashley G.*), and *Watson v. Superior Court* (2009) 176 Cal.App.4th 1407, 1417 [98 Cal.Rptr.3d 715] (*Watson*), to support his argument that section 361.5(b)(12) is constitutionally defective because it does not "require that there be a nexus between conduct and unfitness" to parent. Neither case assists father. At issue in *Ashley G.* was former section 232, subdivision (a)(3), which allowed the court to terminate parental rights when the parent suffered from a disability from habitually using controlled substances, and that disability rendered the parent unable to adequately care for and control the child. (*Ashley G., supra,* 205 Cal.App.3d at p. 1239.) The appellate court considered "what kind of proof" was required to establish the mother was disabled by her drug use and unable to care for and control her child; the court noted that former section 232, subdivision (a)(3) required "a nexus between the abuse and the ability to parent. Otherwise, the statute would simply provide that parental rights of drug addicts be terminated."

(*Ashley G., supra,* at p. 1240, fn. omitted.) *Ashley G.* does not apply here for several reasons. First, that case dealt with a different statute, one that terminated parental rights. Second, the *Ashley G.* court did not evaluate whether former section 232, subdivision (a)(3) comported with due process and, as a result, the court's comments about the "nexus" between the drug abuse and the ability to parent are inapplicable.

Father's reliance on *Watson, supra,* 176 Cal.App.4th at page 1415, is also misplaced. In *Watson,* the Medical Board of California disciplined a doctor for unprofessional conduct after several instances of driving under the influence. On appeal, the doctor claimed Business and Professions Code section 2239 was unconstitutional because it did not require a nexus between the doctor's use of alcohol and his ability to practice medicine safely. (*Watson, supra,* at p. 1411.) The court rejected this argument. It explained, "the existence of a nexus does not require a finding of an actual adverse impact on the past day-to-day practice of medicine, but may be satisfied by a potential for such adverse impact in the future." (*Id.* at p. 1415.) *Watson* does not assist father. *Watson* held that the *possibility* of harm satisfied the nexus requirement for purposes of Business and Professions Code section 2239. (*Watson, supra,* at p. 1415.) Here, father's prior convictions and his history of domestic violence with mother, coupled with his violation of the restraining order and his refusal to accept responsibility for his actions, create a possibility of harm to Allison that provides the basis for the denial of services.

Father is correct that there "is no 'Go to jail, lose your child' rule in California." (*In re S. D.* (2002) 99 Cal.App.4th 1068, 1077 [121 Cal.Rptr.2d 518].) But he is incorrect that section 361.5(b)(12) "imposes just that rule." Section 361.5(b)(12) allows the court to bypass reunification services where the parent has committed a "violent felony" pursuant to Penal Code section 667.5, subdivision (c) and where the parent has not established by clear and convincing evidence that reunification would be in the best interest of the child. (§ 361.5, subd. (c).) Section 361.5(b)(12) does not deprive a parent of due process, and it does not require a parent to relinquish parental rights. It "represents a reasonable and rational means to advance a prime purpose of juvenile court law—providing protection and stability to dependent children in a timely fashion—by efficiently allocating scarce reunification services." (*Joshua M., supra,* 66 Cal.App.4th at p. 473.)

## DISPOSITION

The order denying reunification services for father pursuant to section 361.5(b)(12) is affirmed.

Needham, J., and Bruiniers, J., concurred.

A petition for a rehearing was denied January 7, 2011, and appellant's petition for review by the Supreme Court was denied March 16, 2011, S189816.