Filed 8/10/15  In re Miracle H. CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MIRACLE H., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, | F070687 |
| Plaintiff and Respondent, | (Super. Ct. No. 14CEJ30036-2) |
| v. | |
| I.H. et al., | **OPINION** |
| Defendants and Respondents; | |
| MIRACLE H., | |
| Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Brian M. Arax, Judge.

M. Elizabeth Handy for Appellant.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]     Before Gomes, Acting P.J., Detjen, J. and Franson, J.

-ooOoo-

Minor Miracle H. challenges the juvenile court's dispositional order granting reunification services to her father, I.H. (father).  Although the social worker recommended father not be offered reunification services and both minor's counsel and the Fresno County Department of Social Services (department) agreed, the juvenile court ordered reunification services.  Minor's sole contention on appeal is that the juvenile court's order of reunification services to father was not supported by the evidence and constitutes an abuse of discretion.  We agree and reverse.

## FACTUAL AND PROCEDURAL SUMMARY

Minor was born in September of 2010.  In January of 2014, minor and her older half sibling K.B. were removed from the care of their mother (mother) after paramedics responded to mother's call that she found her one-year-old son, D.B., Jr., dead.[1]  The preliminary cause of death was "sudden unexplained death,"[2] but mother admitted she had been using drugs the night before, was sleeping on the couch with the child, and may have rolled over him.  Mother had a lengthy child welfare history with 10 referrals since 2009 relating to mother's lack of supervision, domestic violence, substance abuse and mental health issues.  Father, who was no longer in a relationship with mother, was incarcerated at the time minor was detained.

---

[1]  K.B. and the deceased child, D.B., Jr., have the same father, D.B., Sr.  K.B. is not a subject party at issue in this appeal, and neither mother nor D.B., Sr., are a party to this appeal.

[2]  The protracted dependency timeline in this case is largely due to a delay in autopsy results.  Those results, dated November 8, 2014, list the manner of death as "natural," and the cause of death as "sudden unexplained death in an infant."  The report also stated that "hypertrophic heart disease" was a condition which independently contributed to the cause of death.  No drugs or alcohol were found in the body.

2.

The department filed a Welfare and Institutions Code section 300[3] petition in February of 2014 on behalf of minor and K.B. alleging that the children were at risk of harm due to mother's substance abuse, mental illness and unstable housing (§ 300, subd. (b)) and that mother had caused another child's death through abuse or neglect (§ 300, subd. (f)). The petition further alleged that D.B., Sr., should have known that K.B. and D.B., Jr., were at risk of abuse in mother's care and that he failed to protect them (§ 300, subd. (b)). An amended petition added D.B., Sr., to the death through abuse or neglect allegation (§ 300, subd. (f)).

An second amended petition in March of 2014 alleged father failed to protect minor from mother, that he should have known minor was not in a safe environment with mother, and that minor would be at risk of abuse or neglect if left in father's care (§ 300, subd. (b)).

At the scheduled jurisdiction hearing March 5, 2014, father, who was now in a residential treatment program, denied the allegations against him and expressed interest in custody of minor. The juvenile court elevated father to presumed father status, noted that he was not involved in an active relationship with mother at the time the petition was filed and was therefore a noncustodial parent, and ordered the department to assess father for possible placement of minor.

The June 10, 2014, report prepared for continued contested jurisdiction/disposition recommended father be denied reunification services pursuant to section 361.5, subdivision (b)(12)[4], as he was convicted of 2nd degree robbery in April of 2009. The department recommended that a section 366.26 permanent planning hearing be

---

[3]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[4]     Section 361.5, subdivision (b)(12) provides that reunification services need not be provided if the parent has been convicted of a violent felony, pursuant to Penal Code section 667.5, subdivision (c).

scheduled. At the time of the report, father was again in jail because he left the treatment program he had been in and failed to check in with his parole officer. The report further stated father had been incarcerated for most of the first two years of minor's life; he had current substance abuse issues; he had a son removed from his custody in April of 2014 due to neglect; he had had a restraining order for domestic violence against mother until August of 2013; domestic violence between father and mother had caused mother to go into early labor with minor; and he had been on parole since 2012, violated parole and probation several times and failed to complete a drug treatment program. Father visited minor five times between February and April 2014, when he left the treatment program and discontinued visits. The visits had not gone well. The minor cried and became upset and the visits had to be cut short.

On August 13, 2014, the juvenile court granted the department's request that father's visits with minor be suspended as he was again in custody and "doesn't seem to be [able to] keep himself out of custody for more days at a time … and it's not in the child's best interest …." Father had been released from jail on or about August 3, 2014, and rearrested three days later for violation of felony charges concerning drugs. Minor's therapist advised against visits with father during incarceration. The juvenile court stated it would reassess the issue of visitation at a later date.

A contested jurisdiction/disposition hearing was finally held December 16, 2014. The department continued to recommend that services not be offered father under section 361.5, subdivision (b)(12). At the hearing, the social worker confirmed that father was considered a "noncustodial" parent, that he was just recently out of custody and in a treatment program, and he was requesting custody of minor. The social worker opined that it would be detrimental to place minor with father due to his criminal domestic violence charges, criminal history, and incarceration. The fact that father was now out of custody did not change the social worker's opinion that father be denied reunification services, citing his past robbery conviction. The social worker acknowledged that she

4.

had never discussed with father his March 2014 statements to a previous social worker that he never witnessed mother taking prescription medication and never witnessed her do anything that caused him concern about her ability to care for minor. Instead, the social worker opined that father's statements that he knew mother "had a lot of problems" and that he and/or his own mother did not want to get involved meant that he knew of mother's mental health and substance abuse issues.

In closing, counsel for the department argued that, based on all the information that was available, father should have known of mother's "substance abuse issues and the like." Counsel for minor argued that minor was doing well in her current placement and that it would be detrimental to place her with father or to offer him services. Counsel for minor noted that, during previous visits with father, minor had experienced "a lot of emotional trauma to the point where minor's therapist had requested that the visits be suspended."

Counsel for father argued that father did not have actual knowledge of mother's mental health and substance abuse issues.

The juvenile court found the record "absolutely replete, if not overwhelming, with facts about mother's really unfitness as a parent," including the failure to maintain stable housing, mental health issues, drug use and abuse, domestic violence, multiple partners, prostituting, and an unhealthy and unsafe lifestyle. The juvenile court opined that father should have known about mother's extensive prior child welfare referrals involving substantial neglect, including a referral made when father assaulted mother while she was pregnant, resulting in her water breaking at a bus stop. That referral had included allegations of domestic violence and drug and mental health issues and voluntary family maintenance services were offered and accepted. The juvenile court found father's insistence that he was not aware of the severity of mother's issues to have "little meaning or import … in light of her other overall history already described …."

The juvenile court found true the allegation (§ 300, subd. (b)) that minor was at risk of harm in that father failed to protect her. The department withdrew the allegations (§ 300, subd. (f)) that mother caused the death of D.B., Jr., through abuse or neglect and that D.B., Sr., failed to protect him.

Minor was removed from mother's physical custody. K.B. was removed from mother and D.B., Sr.'s, custody. Mother and D.B., Sr., were granted reunification services and supervised visits.

As for father, the juvenile court noted that, while father had a criminal history which would allow the court to deny him reunification services, the current dependency was not a product of father's actions, but instead "a failure to act" on his part. The juvenile court also noted that father was currently in a program and making "a real effort." The juvenile court reasoned that, because services were going to be provided mother and D.B., Sr., no permanency was being planned at that point. As such, the juvenile court reasoned, denying father reunification services would "deny him not only his sacred parenthood rights, but we also deny ourselves a concurrent planning option." The juvenile court concluded that, "when we look at best interest in that light, … two parents getting services and a noncustodial parent who is in a service plan right now who isn't does not make sense to the Court. So I do find best interest to provide him services as well …."

The juvenile court found it detrimental to place minor with father, but ordered reunifications services and supervised visits be provided him. Father was to have parenting, domestic violence, substance abuse, and mental health evaluation and recommended treatment, and be required to provide random drug testing. The department was asked to report in two weeks as to the appropriateness of the visits and minor's reaction to them.

Minor now appeals from the December 16, 2014, order granting father reunification services.

**DISCUSSION**

Minor contends that the juvenile court's order of reunification services to father was not supported by the evidence and constitutes an abuse of discretion. We agree.

"As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]" (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.) "When a child is removed from the custody of his [or her] parents, reunification services must be offered to the parents unless one of several statutory exceptions applies." (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227; § 361.5, subd. (a).) Section 361.5, subdivision (b), sets forth certain exceptions, also known as reunification bypass provisions, to this "general mandate of providing reunification services." (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 470.) The juvenile court is not required to distinguish between a custodial and noncustodial parent when ordering or bypassing reunification services for a child in out-of-home placement. (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57.)

Section 361.5, subdivision (b), "reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody." (*In re Joshua M., supra,* 66 Cal.App.4th at p. 470; see also *In re Baby Boy H., supra,* 63 Cal.App.4th at p. 478 [in section 361.5, subdivision (b), the Legislature "recognize[d] that it may be fruitless to provide reunification services under certain circumstances"].) When the juvenile court determines one or more of the exceptions or bypass provisions apply, "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]" (*Baby Boy H., supra,* at p. 478; see also *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744; *In re Ethan N.* (2004) 122 Cal.App.4th 55, 65.)

Section 361.5, subdivision (b)(12) provides that reunification services need not be provided to a parent where the parent has been convicted of a "violent felony" within the meaning of Penal Code section 667.5, subdivision (c). (See *In re James C.* (2002) 104 Cal.App.4th 470, 485 [denial of reunification services pursuant to § 361.5, subd. (b)(12) is proper where the father was convicted of two violent felonies, including robbery and firearm use].) Here, father was convicted of 2nd degree robbery in April of 2009. Robbery is a "violent felony" pursuant to Penal Code section 667.5, subdivision (c)(9).

However, "[s]ection 361.5, subdivision (c) enables a parent to obtain reunification services notwithstanding section 361.5[,subdivision] (b)(12) where the parent demonstrates reunification is in the child's best interest by offering evidence of, among other things, his or her current ability to parent. To determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity. [Citation.]" (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116.) "A best interest finding requires a likelihood reunification services will succeed; in other words, 'some "reasonable basis to conclude" that reunification is possible ....'" (*Ibid.*)

It should be noted, however, that the factors listed above are not exhaustive. It has long been recognized that the concept of a child's best interest "is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult." (*Adoption of Michelle T.* (1975) 44 Cal.App.3d 699, 704.) Thus, additional factors may bear upon the court's best interest finding, depending upon the circumstances of the case.

Hence, under section 361.5, subdivision (c), the juvenile court "shall not order reunification for a parent" described in, inter alia, section 361.5, subdivision (b)(12) "unless the court finds, by clear and convincing evidence, [and the parent affirmatively demonstrates] that reunification is in the best interest of the child." (§ 361.5, subd. (c);

8.

see also *In re Ethan N., supra,* 122 Cal.App.4th at p. 64; *In re William B., supra,* 163 Cal.App.4th at p. 1227 ["""[o]nce it is determined one of the situations outlined in [section 361.5,] subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]" [Citation.]' The burden is on the parent to change that assumption and show that reunification would serve the best interests of the child."].)

The juvenile court has broad discretion in determining whether the parent has met this burden and therefore whether to offer the parent reunification services under subdivision (c). (*In re Angelique C.* (2003) 113 Cal.App.4th 509, 523.) An appellate court may not disturb the court's best interest determination absent a showing of an abuse of discretion. (*Id.* at pp. 523-524.) An abuse of discretion is shown when there is no substantial evidence to uphold the findings. (*In re Ethan N., supra,* 122 Cal.App.4th at pp. 64-65.) In this case, we conclude that the juvenile court's finding that reunification services would be in minor's best interests is not supported by the evidence and that the juvenile court abused its discretion in ordering those services be provided.

Here, the juvenile court did not specifically state how it weighed the various criteria in determining whether reunification was in minor's best interest. (*In re Allison J., supra,* 190 Cal.App.4th at p. 1116.)

In determining whether reunification services should be offered father, the juvenile court characterized father as "not a direct actor" or one "who wasn't directly involved in [the] jurisdictional facts" of minor's dependency, although the juvenile court acknowledged that father failed to act when he should have. The juvenile court noted that, although father claimed not to have seen mother do anything that would cause concern in the care of minor, that statement had "little meaning or import" based on the numerous previous referrals involving mother, some which involved father as well. Thus, while the juvenile court addressed the seriousness of the problem leading to minor's removal, it gave it little weight.

9.

As for father's current efforts, fitness and history, we question the juvenile court's assessment that father was "making a real effort" in his current treatment program. The juvenile court was, in its own words, aware of father's "definite and distinct criminal history," as well as repeated incarcerations and attempts and failures at rehabilitation. The record shows that father failed to complete a drug treatment program in July of 2013, and the same month, was charged with assault with a deadly weapon. A month later, he was charged with battery and failure to comply with drug treatment. In December 2013, he was charged with absconding supervision and possession of a deadly weapon. Father was incarcerated again around the time minor was detained in January of 2014. Upon release in February of 2014, father was given a residential rehabilitation program as part of probation and started to visit minor, but he violated probation, was charged with methamphetamine use, and was back in prison and visits suspended. He was in custody until just before the jurisdiction/disposition hearing in December of 2014.

Father's current participation in a treatment program was, as noted by the juvenile court, "under criminal threat. If he doesn't, he'll go back to custody." The current program was a year-long program and, at the time of the hearing, father had only been there for eight days. After the numerous and repeated failures by father at rehabilitation, being in a program for little more than a week is not a factor weighing heavily in father's favor.

Although the juvenile court considered the bond between minor and father, it acknowledged that the bond "not very great," due to father's repeated incarcerations and attempts at treatment. Evidence before the juvenile court was that father was convicted of second degree robbery in 2009 and sentenced to three years in prison in January of 2011, and thus was incarcerated for most of the first two years of minor's life. Father had a restraining order in place after he was released and until August of 2013, which father claimed made it difficult for him to have contact with minor, although he claimed to have had a birthday party for minor when she was two. Although father claimed to have

attempted to file custody paperwork for minor when he was released in February of 2014, he did not follow through.

Minor did not mention father when she was interviewed by a social worker after being detained. Visits between father and minor a few months after detention were strained and minor did not respond well. She became upset and cried when she saw father, and the visits had to be ended early. Minor would cling to anyone except father. By April of 2014, with the help of a social worker, minor began to feel a bit more secure at visits, but father stopped visiting because he left treatment, was again arrested and back in jail. Minor's therapist noted minor was "hyper-vigilant and tense" and "markedly anxious during interactions with her father." The therapist opined that continued visits with father while incarcerated were not in minor's best interests and could have the potential to be detrimental. At the hearing, minor's counsel opined minor would experience detriment if she were placed with or if services were offered father. Counsel noted that previous visits with father had caused "a lot of emotional trauma."

Finally, the juvenile court failed to consider the bond between minor and her caretaker or minor's need for stability and continuity. Minor was described as being in a stable placement; she had met her therapy goals; she was doing well in school; and she was placed with a half brother with whom she was bonding[5]; she called her care provider "mom"; and she felt loved and accepted.

In making its order granting father reunification services, the juvenile court noted that it did so in part because mother and D.B., Sr., would be provided services "so it's not like we're moving to permanency planning right now anyhow." The juvenile court went on to state that denying father reunification would "deny him not only his sacred parenthood rights, but we also deny ourselves a concurrent planning option." Thus,

---

[5] The record shows that father has a son, L., who was removed from his custody in April of 2014, due to father's drug use and failure to protect L. from L.'s mother. L. was placed with a maternal relative, and minor was subsequently placed there as well.

11.

based on the court's statements, it appears that it focused primarily on the best interests of father and the convenience of the court, as opposed to the best interests of minor.

Section 361.5, subdivision (b)(12) allows the juvenile court to bypass reunification services where the parent has committed a "violent felony" pursuant to Penal Code section 667.5, subdivision (c), and where the parent has not established by clear and convincing evidence that reunification would be in the best interest of the child. (§ 361.5, subd. (c).) Section 361.5, subdivision (b)(12), "represents a reasonable and rational means to advance a prime purpose of juvenile court law – providing protection and stability to dependent children in a timely fashion – by effectively allocating scarce reunification services." (*In re Joshua M., supra,* 66 Cal.App.4th at p. 473.)

We find the juvenile court's order of reunification services to father is not supported by substantial evidence and constitutes an abuse of discretion. There simply was not "clear and convincing evidence" that reunification was in minor's best interests, or any evidence that reunification was "possible." (*In re William B., supra,* 163 Cal.App.4th at pp. 1229-1230.)

## DISPOSITION

The order of the juvenile court granting reunification services to father is reversed and the matter is remanded. The juvenile court is directed to enter an order terminating reunification services; the department is directed to set this matter for a hearing pursuant to Welfare and Institutions Code section 361.5, subdivision (f) as soon as possible.