Filed 4/6/15  In re C.F. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C. F., a Person Coming Under the Juvenile Court Law. | C076257 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD234198) |
| Plaintiff and Respondent, | |
| v. | |
| D.R., | |
| Defendant and Appellant. | |

Mother, D.R., appeals the juvenile court's determination denying her reunification services with the minors, Cecilia F. and Savannah R[1].  The trial court found two

---

[1]    Although both Cecilia and Savannah were the subject of petitions, the notice of appeal only lists Cecilia's case.  Thus, the record on appeal does not contain the petition for Savannah.

1

reunification bypass provisions applied; specifically that mother had previously had reunification services and her parental rights terminated to the minors' half sibling, and mother had not made reasonable efforts to treat the problems that led to the removal of the half sibling.  Mother contends the bypass provisions do not apply as she had made reasonable efforts to treat the problems that led to the removal of the half siblings.  We affirm.

BACKGROUND

In 2009, the minors' half sibling, A. R., was declared a dependent of the court based on allegations of domestic violence between mother and A. R.'s father.  The juvenile court found mother had a history of engaging in domestic violence with A. R.'s father, dating back to at least December 2008.  The domestic violence included father pushing mother, slapping her in the face with an open hand, punching her in the face and stomach, and hitting her in the face with a wooden chair.  A. R.'s father had also pointed a handgun at mother and threatened to kill her.  The incident resulted in mother suffering a broken jaw.  Mother denied the allegations, and minimized the domestic violence, stating it was the first time.  Mother's case plan included general weekly counseling, a domestic violence program, and parenting classes.  Mother did not participate or engage in any services.  In July 2010, the juvenile court found mother had not made any progress alleviating or mitigating the causes necessitating placement and terminated reunification services, she had failed to meet with the Sacramento Department of Health and Human Services (the Department), failed to participate in any court ordered services, and had been inconsistent in her visitation.  In December 2010, the juvenile court terminated parental rights.

In December 2012, the Department received a referral alleging domestic violence between mother and Cecilia's father, Anthony F.  Mother sustained bruises on the right side of her face, marks/bruises on her left shoulder and around the base of her neck, and a swollen lip.  Father fled the scene prior to law enforcement officers arriving.  Mother

2

refused to press charges, saying she did not want to be a " 'snitch' " and did not want Anthony to return to jail. She stated Anthony "only made a 'bad decision today.' " The parents agreed to participate in a parenting program.

In January 2014, the Department filed a petition under Welfare and Institutions Code[2] section 300 alleging the parents had failed to protect Cecilia, "in that they have a history of engaging in acts of domestic violence in the presence of the child." The violence included father calling mother names, attempting to grab the car seat away from mother while Cecilia was restrained in the seat, putting his arm around mother's neck and attempting to choke her, biting mother's wrist, and cursing at Cecilia's half sibling, Savannah. The petition also alleged mother had a lengthy history of domestic violence in relationships and had failed to remedy the pattern of violence. Mother had also failed to follow through with obtaining a restraining order, a formal custody order, and had not gotten a necessary safety lock on her front door. Mother did not appear at the initial proceeding.

The incident that led to the filing of the petition occurred on December 6, 2013. Mother and Anthony got into an altercation when Anthony came to pick up Cecilia. The parents were each holding one side of the infant seat, and Anthony was pulling on it, while Cecilia was in the seat. Anthony then bit mother on the arm. When mother set Cecilia down, Anthony jumped on mother from behind and tried to choke her. Anthony then left with Cecilia.

Mother denied any prior domestic violence with Anthony but admitted there was verbal abuse. Law enforcement officers gave mother a packet and told her to file for temporary custody. The social worker provided mother with information on an agency that could assist her in filling out the paperwork for a restraining order and custody.

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

3

Mother reported she had some learning difficulties and the social worker advised her that the agency could help her. Mother agreed not to allow Anthony to have further contact with Cecilia. Mother denied any current drug use, but acknowledged she had a past history of substance abuse.

When asked about the December 2012 domestic violence incident between her and Anthony, mother claims she had forgotten it. She said she and Anthony had stayed together after that domestic violence incident, and "participated in some couples groups through their church; however [Anthony] stopped attending the groups with her and their relationship declined after that." Mother also indicated there had been domestic violence with Savannah's father, Aaron Q. He had made threats toward her and Savannah, had substance abuse issues, and had threatened to kidnap her and Savannah.

Almost two weeks after the December 6, 2013 incident, mother had not followed through to obtain a restraining order or custody. Mother stated she did not have transportation and had trouble filling out the forms due to a learning challenge. The social worker reminded mother about how to get help and provided mother with 10 all-day bus passes. Mother agreed to follow through with attending a divorce workshop and a restraining order workshop at the family courthouse. The social worker and mother also discussed getting a lock for the front door.

By January 3, 2014, mother had still not obtained or sought a restraining order or custody of the children. Mother denied being told she needed to follow through and denied any need for further services or assistance from the Department. Mother claimed she had completed three random drug tests. The social worker reminded her she had only completed one random test and had missed several others.

Mother reported her relationship with Anthony was "good" until six months into their marriage in December 2011. She denied any physical abuse until the December 6, 2013 incident. She stated she had not filed for divorce "because she is a person with a

4

'heart' " and did not want to cause Anthony more pain while he was going through a difficult time.

The social worker noted the bypass provisions of section 361.5, subdivision (b)(10) and (b)(11) (hereafter subdivision (b)(10) and (b)(11)) applied to mother. Nonetheless, the social worker recommended services for mother, as she had been cooperative and was no longer in a relationship with Anthony.

Mother reported on January 29, 2014, she had had contacted a parenting class, and a domestic violence class, although she had not begun attending any classes. As of February 6, 2014, the social worker reported mother was setting up her domestic violence classes and counseling.

Also on January 29, 2014, mother admitted that she had smoked methamphetamine three days earlier. She tested positive for methamphetamine and barbiturates on January 30, 2104. Mother did not show up for a scheduled test on February 3, but tested negative on February 4, 2014. She did not show up for a scheduled test on February 18, 2014.

Anthony stated mother had "left for another state and does not want to engage in services." He also reported he had received text messages from mother stating she was using drugs. Mother denied using drugs or intending to leave the state. She stated she had fixed the lock for her apartment door and would be participating in a parenting class on February 25, 2014.

On February 27, 2014, the social worker reported mother was struggling to have consistent visits with the minors and her participation in ameliorating the problems, which led to removal, was minimal. Nonetheless, the social worker concluded it would be in the children's best interest, particularly the half sibling Savannah, for mother to receive reunification services. As of the hearing date, March 20, 2014, mother had missed another scheduled drug test. Mother had not attended parenting classes and had not been set up for the domestic violence intake assessment.

5

The social worker testified at the hearing that mother had engaged in the initiation of services, was completing her mental health evaluation, did an alcohol and drug assessment, and had drug tested a couple of times. The social worker was hopeful mother could complete services and would be able to reunify in six months. The social worker acknowledged mother had not yet engaged in any substance abuse services, had not engaged in a domestic violence program, general counseling, or parenting classes.

The juvenile court found the jurisdictional allegations true, sustained the petitions, and adjudged the children dependents. The juvenile court ordered the children removed from parental custody. The juvenile court also found the bypass provisions of subdivision (b)(10) and (b)(11) applied to mother, in that mother had failed to reunify with a half sibling and mother had not made reasonable efforts to treat the problem that led to removal of the half sibling, and mother's parental rights over the half sibling had been permanently severed. Specifically, the juvenile court noted it was not necessary that mother had completely fixed the problem and that it was appropriate to consider, among other factors, mother's learning disability. But, the half sibling "was a dependent child in 2009 as a result of domestic violence. The mother had five years to recognize that there are issues in her relationships to identify the issues to complete services, get help, and eliminate the problem. And the mother has not taken any steps to address the issue. Even after the dependency of this action, the mother's efforts have been fairly minimal." The juvenile court did not find the provision of reunification services to mother would be in the children's best interest. The juvenile court considered the likelihood of success and the level of relationship between the parent and child. The juvenile court noted mother failed to appear at the initial proceedings, and her response to the children being removed had been to use methamphetamine thereby increasing the risk to the children and the problems that needed to be overcome. In the two months since the children had been removed, mother "is not yet in parenting classes, is not yet in domestic violence, is not regularly engaging in any urinalysis testing, is not engaging in substance abuse

6

treatment. . . . [¶] The evidence also establishes, that it wasn't even until March that the mother became regular in engaging with her visitation." While Savannah seemed excited to see mother, the relationship did not appear to be reciprocated by mother. There were missed visits and not much of a demonstrated parent-child relationship. Accordingly, the juvenile court denied reunification services to mother.

## DISCUSSION

Mother contends the juvenile court erred when it denied her reunification services based on the bypass provisions of subdivision (b)(10) and (b)(11). She contends the record does not show she failed to make a reasonable effort to treat the cause of the prior problems and that she was not required to cure the problem leading to removal of the half sibling, just make reasonable efforts.

When a child is removed from the parent's home, reunification services may be offered to the parent, " 'in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]' [Citations.] Section 361.5, subdivision (b) sets forth certain exceptions--also called reunification bypass provisions--to this 'general mandate of providing reunification services.' " (*In re Allison J*. (2010) 190 Cal.App.4th 1106, 1112.) Subdivision (b)(10) and (b)(11) "authorize the denial of services to a parent who has failed to reunify with another child or whose parental rights to another child were terminated if the court finds that the parent 'has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling. . . .' " (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.) An order denying reunification services is reviewed for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.)

"We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions

inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made. [¶] Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at pp. 914-915.)

Here, the record shows mother has had at least a five-year history of domestic violence with all of the fathers of each of her children. In all that time, there is no indication she ever once engaged in services to address or remedy domestic violence problems. In the 2009 dependency case, she did not participate in services at all. She denied any domestic violence had occurred and minimized the domestic violence. Mother admitted there had also been domestic violence in her relationship with Savannah's father, Aaron. After an incident in 2012 with Cecilia's father, Anthony, mother refused to press charges in an effort to protect Anthony, claimed he had only made a bad decision, and suggested this was the first violence in their relationship. Although she agreed to engage in a parenting program, there is no indication she participated in any domestic violence counseling. She claimed she and Anthony had done "some" couples counseling in their church. There is no evidence for how long she participated in this counseling or the kinds of matters addressed. After the 2013 incident, and despite the 2012 incident, mother continued to deny any domestic violence between her and Anthony. She was provided with instruction and advice on obtaining a restraining order and custody, and with transportation assistance. She made no efforts to follow through on these actions. She agreed to attend a divorce workshop and a restraining order workshop. There is no evidence she did. In fact, she did not file for

8

divorce to protect Anthony. She denied any need for further assistance or services from the Department. By the time of the hearing, mother had not attended any parenting or domestic violence classes, general or substance abuse counseling, she had not completed her mental health evaluation and her visits with the children were inconsistent. Mother's history as to the duration, quality, and quantity of her efforts, as well as the lack of progress and success, provide ample evidence to support the conclusion that she has not made reasonable efforts to address those problems.

## DISPOSITION

The order of the juvenile court denying mother reunification services is affirmed.


        ROBIE        , Acting P. J.


We concur:


        MURRAY        , J.


        HOCH        , J.