Filed 6/11/21  In re A.A. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.A. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076122 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J285601 & J285602) |
| v. | OPINION |
| M.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Jodi L. Doucette, Special Counsel, for Plaintiff and Respondent.

1

Defendant and appellant M.A. (father) challenges a juvenile court's order denying him reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(6), as to his daughters, A.A. and I.A. (the children), and denying him visitation. We affirm.

## PROCEDURAL BACKGROUND

On June 16, 2020, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of the children. I.A. was three years old at the time, and A.A. was two.[2] The petition alleged that the children came within section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (d) (sexual abuse). Specifically, it alleged that father physically abused the children, that the children's mother, K.S. (mother),[3] failed to protect them since she knew or reasonably should have known of the abuse and allowed father to reside in the home and have unsupervised access to them, that father sexually abused them, and the abuse "was not

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] CFS filed two petitions containing the same allegations; thus, we will refer to them collectively as a single petition. We note, however, that CFS apparently meant to file a separate petition on behalf of each child, but both petitions list I.A. as the child and state there is a related case concerning A.A. This apparent error was subsequently corrected when CFS filed amended petitions on behalf of the children.

[3] Mother is not a party to this appeal.

2

limited to digital penetration," that mother had a history of substance abuse and mental health issues, and that father and mother (the parents) engaged in domestic violence.

*Detention*

The social worker filed a detention report recommending that the children be detained in foster care. The report stated that CFS received a referral on April 23, 2020, alleging sexual and emotional abuse of the children by father. One of the children disclosed to mother a few months prior that father touched one of them inappropriately. CFS received a second referral on April 28, 2020, alleging that father sexually and emotionally abused the children. The social worker further reported that father's 14-year-old daughter, Haley, was showing the children pornography; however, she moved back to Texas with her mother.

The social worker interviewed mother, who said she was diagnosed with bipolar disorder, saw a psychiatrist twice a month, and had phone sessions with a clinician twice a month. When asked about the sexual abuse allegations, she said she told her counselor that I.A. disclosed to her about five or six months prior that "daddy touches me" and that Haley touched her. Mother said I.A. pointed to her chest and front of her groin area with her finger.

The social worker interviewed I.A. and asked if anyone had touched her private area. Using a picture of a girl, I.A. circled the groin area and stated that her dad had touched her.

The social worker also interviewed father, and he denied inappropriately touching the children. He said that when Haley was living with him, she accused him of touching

the children because she got in trouble for getting "caught having sex." He said Haley told I.A. to say he touched her "out of spite."

The social worker further reported that an interview and medical examination were conducted at the Children's Assessment Center (CAC) on May 28, 2020. During the medical examination, I.A. disclosed to the nurse practitioner that father touched her. The nurse practitioner recommended that I.A. be referred for a forensic interview. A forensic interview was held on June 12, 2020, and I.A. disclosed that "daddy touches me with his fingers," as she motioned to her vaginal area with her fingers. That same day, mother was served with a detention warrant with law enforcement present. While being transported, I.A. disclosed that father also touched A.A. in her private area.

The court held a detention hearing on June 17, 2020, and detained the children in foster care. Counsel for the children asked the court to make a detriment finding with regard to visitation with father and order that there be no visits. Father's counsel asked the court not to make a detriment finding. The court stated that it would order CFS to assess detriment in light of the information in the CAC report and also assess whether the children were asking to see their father. It would then consider everything at the next hearing.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on July 7, 2020, recommending that the court sustain the petition, declare the children dependents of the court, and remove them from the parents' custody. The social worker recommended

4

offering reunification services to the parents and ordering supervised visitation for mother, but no visitation for father.

The social worker reported that she went to the home of the foster parents where the children had been placed. The foster parents said the children were very advanced verbally, and they had continued to report the physical and sexual abuse by father as before. They reported that A.A. said father made them lay their hands flat on the table, and he would hit them with a fist. He would also punch her in the stomach, vagina, and ribs. The foster parents further reported that the children indiscriminately disclosed the abuse to strangers. When asked if the children had expressed a desire to see father, the foster parents said the first day or so they asked for him, but noted that A.A. specifically expressed she was scared of father.

The social worker interviewed I.A. privately on June 25, 2020. I.A. said that father hurt her. The social worker reported that I.A. "said that 'Daddy touched me right here,' spread her legs wide and aggressively poked at her vagina with her pointer and middle finger pointed and the rest of her fingers fisted." I.A. said she saw "Daddy touch [A.A.] private with fingers." When asked who Haley was, I.A. said that "Daddy touch me here and Haley touch me here," while pointing to her vagina and then her bottom. When asked if Haley told her anything, I.A. shook her head and said, "Haley touches me and daddy touches me." When asked if anyone hurts each other, I.A. said, "Daddy hurt [A.A.] with cans" and described father throwing a can of food at A.A.'s face and then "blood coming out."

5

The social worker also interviewed A.A., who was reluctant to answer most questions. However, she did say, "Daddy hurt my finger." When asked if she would like to visit father, she said, "Daddy hurt sister and me."

The social worker spoke with mother on the phone. Mother said Haley had alleged that father sexually abused her. Mother also confirmed that I.A. told her father touched her inappropriately approximately six months prior; however, she never found anything to support that disclosure. Mother often repeated that she had no reason to believe that father sexually abused the children.

The social worker spoke with father on the phone, as well. He said he was 17 years old when his girlfriend Jennifer became pregnant with Haley. Jennifer moved to Texas a few years ago. Father reported that Haley began running away and acting out, so Jennifer asked him to help out, which is why Haley lived with him for a while. Father admitted that Jennifer's sister accused him of sexual abuse, and that the mother of his other two children also accused him of molesting their two children. Father denied physically abusing the children and said the sexual abuse allegations were "because of the trouble with Haley." He felt as if she coached the girls.

The social worker opined that there was more than enough evidence to substantiate the allegations against father. He accepted little to no responsibility for his actions. He had a well-documented history of domestic violence, and he disclosed prior allegations of sexual abuse by others. The social worker was greatly concerned that both parents repeatedly blamed father's 14-year-old daughter, ex-girlfriends, and others for the sexual abuse allegations. As to visitation, the social worker stated that, based on the

severity of the allegations, the children's continued disclosures, and her concern for their emotional well-being, visits with father would be detrimental. The social worker recommended that the children engage in therapy and that any future visitation be initiated when found to be appropriate by the assigned therapist.

The court held a jurisdiction/disposition hearing on July 8, 2020, and continued the matter to October 6, 2020. On October 1, 2020, the social worker submitted additional information to the court and reported that on July 9, 2020, the social worker met with the foster parents and the children in the home. I.A. disclosed sexual abuse by father, stating that he would spread her legs wide and touch her vagina with his finger. She stated that she saw father touch A.A.'s private parts too. The social worker observed that the children exhibited poor physical boundaries, which she said was sometimes a behavior seen in young victims of sexual abuse. The social worker recommended that there be no reunification services for father, since there was clear and convincing evidence that the children were brought within the jurisdiction of the court under section 361.5, subdivision (b)(6). The social worker also recommended that there be no visitation between father and the children.

*Amended Section 300 Petition*

On October 5, 2020, the social worker filed an amended section 300 petition on behalf of the children.[4] The petition alleged that the children came within section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (d) (sexual abuse), and

---

[4] The social worker again filed separate petitions for each child. However, since they contain the same allegations, we will refer to them collectively as one petition.

(e) (severe physical abuse). With regard to father, the petition specifically alleged that he physically abused the children and engaged in domestic violence with mother. It also alleged that the children had been severely sexually abused by father, and the sexual abuse "included but was not limited to digital penetration."

The court held a hearing on October 6, 2020, and the parties acknowledged receipt of the amended petition. Father requested the children to be potential witnesses. The court ordered the children to be present at the next hearing and scheduled it for November 10, 2020.

*Contested Jurisdiction/Disposition Hearing*

The court held a contested jurisdiction/disposition hearing on November 10, 2020. I.A. was examined to testify. The court found her to be a truthful child but not competent to testify, since it did not think she understood the gravity of the situation.

The court held a continued hearing on November 12, 2020. Both father and mother objected to the allegations in the petition without submitting any affirmative evidence. Counsel for the children and county counsel submitted on the petition and recommendations. County counsel then asked if the court wanted argument as to the clear and convincing standard or if it wanted "to wait until dispo." The court said, "If you want me to make the (d) by clear-and-convincing I can hear that now." The court asked father's counsel if he wished to be heard on the matter, and he said yes. Counsel went on to state that it was "without a doubt" that I.A. had stated on multiple occasions that father touched her vaginal area. However, he noted that the court found her incompetent to testify.

8

After reading the reports and hearing argument from counsel, the court found the allegations under section 300, subdivisions (a) and (b) true, and found the allegations under subdivision (d) true by clear and convincing evidence. The court noted it was struck by the number of times I.A. consistently gave the same story, citing mother's interview in May 2020, when she said I.A. told her five or six months prior that "daddy touches me" and pointed to her chest and groin area. The court recounted that on May 12, 2020, I.A. told the social worker, with the use of pictures, that father touched her groin area. The court further noted that in several of the disclosures, I.A. indicated she had seen him do the same to her sister. The court stated that on June 25, 2020, the foster parents reported that the children continued to disclose sexual abuse. Furthermore, I.A. told the social worker that father touched her, as she spread her legs wide and pointed. Then, on July 9, 2020, I.A. made the same disclosures to another social worker. The court noted that the children were described as showing poor physical boundaries, which was consistent with sexual abuse. The court found that all the disclosures over a period of time to multiple different parties were consistent in nature, showed advanced sexual knowledge for a three year old, and thus showed a special indicia of reliability. The court specifically noted that the evidence was sufficient to support a true finding of the section 300, subdivision (d) allegation by clear and convincing evidence.

The court then stated that it was working from the original petition, and that it understood there was an amended petition, but CFS was prepared to dismiss the amended petition and proceed on the original one. County counsel affirmed, and the court dismissed the amended petition.

The court proceeded to disposition and asked father's counsel if he had any arguments. Father's counsel objected to the recommendation to bypass reunification services under section 361.5, subdivision (b)(6). He asserted that section 361.5, subdivision (b)(6), required a finding of severe sexual abuse that is based on, but not limited to, sexual intercourse or stimulation involving genitalia-genitalia, oral-genitalia, and anal-genitalia or oral-anal contact. He contended that severe sexual abuse did not exist in this case. County counsel argued that the section 361.5, subdivision (b)(6) bypass includes examples regarding penetration and manipulation of the child's genitalia by an animate or inanimate object, and the court could find severe sexual abuse here by I.A.'s reenactment of father jabbing his fingers into her vaginal area while aggressively yanking her legs open. County counsel further argued that it would not be in the best interests of the children to give father services.

The court ordered the children removed from the parents' custody and declared them dependents. It found by clear and convincing evidence that section 361.5, subdivision (b)(6), applied and noted that as to severe sexual abuse, "there are descriptions that are not limited but one of the specific descriptions is manipulation of the child's genital." The court stated, "I think it's clear that that fits the description, that's by an animate or inanimate object which is the father's fingers and I feel like it clearly fits that definition." The court found that the specific acts were concerning, in that the children were very young (two and three years old at the time of the incidents) and father was in a position of trust. The court noted that the circumstances were alarming in that Haley described very similar treatment when she was around the same age. It then found

10

no likelihood that the children could be safely returned and that section 361.5, subdivision (b)(6), applied to both girls. The court denied services to father, but ordered them for mother. It then confirmed the detriment finding and denied visitation, noting that it had sustained true findings of sexual abuse, that the children were young and could not possibly know how to process the information, that they were displaying behaviors consistent with sexual trauma, and their sibling apparently had experienced similar trauma and was continuing to react sexually. The court therefore found that visitation was not in the children's best interest and specifically found it would be detrimental to them.

DISCUSSION

I. <u>The Court Properly Bypassed Father's Reunification Services</u>

Father argues the section 361.5, subdivision (b)(6) bypass provision was not applicable here since the court only made a finding of sexual abuse under section 300, subdivision (d), at jurisdiction. He asserts the court did not make a finding that the children were severely sexually abused since the amended petition, which contained the section 300, subdivision (e) allegation, was dismissed. He further claims the court recognized it did not make the jurisdictional finding that the sexual abuse was severe and subsequently made such finding at disposition; however, because a severe sexual abuse finding "is not a separate and distinct finding at disposition," the court's decision to bypass his services cannot be sustained. Respondent points out that the jurisdiction and disposition were combined, and the court made its orders at the same hearing. Thus, respondent states the real issue is whether the court could bypass services under section

11

361.5, subdivision (b)(6)(A), when it made a section 300, subdivision (d) sexual abuse finding, and not a section 300, subdivision (e) severe sexual abuse finding. Respondent concludes that the court could do so, and the evidence supported its finding of severe sexual abuse. We find that the court made the proper findings to permit it to bypass services under section 361.5, subdivision (b)(6)(A).

A. *Relevant Law*

" 'As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]' [Citations.] Section 361.5, subdivision (b) sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services.' [Citations.] [¶] Section 361.5, subdivision (b) 'reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody.' [Citations.] When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

Section 361.5, subdivision (b)(6)(A), authorizes a juvenile court to deny services to a parent when a child "has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this

12

subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian." Section 361.5, subdivision (b)(6)(B), provides: "A finding of severe sexual abuse, for the purposes of this subdivision, may be based on, but is not limited to, sexual intercourse, or stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact . . . or the penetration or manipulation of the child's, sibling's, or half sibling's genital organs or rectum by any animate or inanimate object for the sexual gratification of the parent or guardian, . . ."

"We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence. [Citation.] Under such circumstances, we do not make credibility determinations or reweigh the evidence. [Citation.] Rather, we 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121-1122.)

B. *The Evidence Was Sufficient to Support the Bypass of Father's Services Under Section 361.5, Subdivision (b)(6)*

The court found that the children came within the provisions of section 300, subdivisions (a), (b), and (d), and specifically noted that it found the evidence in support of the sexual abuse allegation under subdivision (d) to be clear and convincing. It described, at length, the evidence of the sexual abuse of the children by father, including the various times I.A. told different individuals that "daddy touches me with his finger" and pointed to her vaginal area. It also noted that in several of the disclosures, I.A. said

13

father also touched A.A. in her private area. The court specifically noted the consistency of I.A.'s statements, and that her statement showed advanced sexual knowledge that a three year old would not normally have. The court's findings are supported by the record. The evidence showed that I.A. disclosed the sexual abuse to mother, the social worker, the CAC, the police, and the foster parents. When describing the abuse, I.A. repeatedly pointed to her vaginal area with her fingers. Furthermore, the social worker observed that the children exhibited poor physical boundaries, which was consistent with young victims of sexual abuse.

Father claims the court only made a finding of sexual abuse under section 300, subdivision (d), but did not make a finding that the children were *severely* sexually abused, since it dismissed the section 300, subdivision (e) allegation. He then argues that the subdivision (d) finding did not satisfy the severe sexual abuse requirement of section 361.5, subdivision (b)(6)(A); thus, the court erroneously applied the bypass provision.

CFS originally alleged that father sexually abused the children under section 300, subdivision (d). It then added the allegation that the children were severely sexually abused by father, pursuant to section 300, subdivision (e), in the amended petition. However, the court dismissed the amended petition pursuant to CFS's request and proceeded on the original petition. It then found the section 300, subdivision (d) allegation of sexual abuse true. At the disposition portion of the combined hearing, the court applied section 361.5, subdivision (b)(6), to bypass father's services. Section 361.5, subdivision (b)(6)(A), authorizes a juvenile court to deny services to a parent when a child "has been adjudicated a dependent pursuant to *any* subdivision of Section 300 as a

14

result of severe sexual abuse . . . ." (Italics added.) Section 361.5, subdivision (b)(6)(B), provides: "[a] finding of severe sexual abuse, for the purposes of this subdivision, may be based on, but is not limited to . . . the penetration or manipulation of the child's, sibling's, or half sibling's genital organs or rectum by any animate or inanimate object for the sexual gratification of the parent or guardian, . . ." The court noted the description of severe sexual abuse as manipulation of the child's genitals by an animate or inanimate object and found that father's fingers touching the children's genitals fit that description.

Father argues that the court's decision to bypass his services cannot be sustained since the court "did not make the jurisdictional finding the sexual abuse was severe." In other words, he claims that the court made the finding of severe sexual abuse at the disposition phase, so the clear and convincing evidence requirement for jurisdiction on this issue was not satisfied. We disagree. To be sure, the issue of what constituted severe sexual abuse was raised during the disposition part of the hearing, when father claimed the court should not apply the section 361.5, subdivision (b)(6) bypass provision because severe sexual abuse did not exist in this case. County counsel argued the bypass provision applied since there was severe sexual abuse in this case, as shown by the description of I.A.'s reenactment of father pulling her legs open and jabbing his fingers into her vagina. The court confirmed that father's conduct fit the description of severe sexual abuse (see *ante*) and also noted its concern that father abused his position of trust with his children. As previously noted, the finding of severe sexual abuse was made at the combined jurisdiction/disposition hearing. When the court realized at the disposition portion of the hearing that it had not made the finding of severe sexual abuse, it

15

essentially reopened that issue and made that finding by clear and convincing evidence. (See *Estate of Young* (2008) 160 Cal.App.4th 62, 91 [discussing the court's broad discretion to reopen evidence].)  Both father and CFS had the opportunity to be heard on that issue.  Any suggestion that the court could not reopen the jurisdiction portion of the hearing and address that issue is untenable and exalts form over substance, particularly where the combined hearing was ongoing.  The court relied upon the same evidence it discussed at the initial jurisdictional portion of the hearing in making the finding of severe sexual abuse.

We conclude there was substantial evidence to support the finding of severe sexual abuse of the children by father.  Thus, the court properly bypassed his reunification services under section 361.5, subdivision (b)(6).

## II.  The Court Properly Denied Father Visitation

Father argues the court abused its discretion in denying him visitation since it "confirmed the detriment finding" but "there was no detriment finding for the court to confirm," and there was no evidence of detriment.  We conclude the court properly denied visitation.

When the juvenile court places a dependent child in foster care and orders reunification services, it shall also order visitation between the parents and child. (§ 362.1, subd. (a)(1)(A).)  "Visitation shall be as frequent as possible, consistent with the well-being of the child," but "[n]o visitation order shall jeopardize the safety of the child."  (§ 362.1, subd. (a)(1)(A), (B).)  Thus, during the reunification period for a parent,

16

visitation is mandatory absent the exceptional circumstance where visitation would threaten the child's safety. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491.)

In contrast, when the court has denied reunification services under the bypass provision used here (§ 361.5, subd. (b)(6)), visitation is discretionary. (*In re J.N.* (2006) 138 Cal.App.4th 450, 457 (*J.N.*).) Section 361.5, subdivision (f), provides that "[t]he court *may* continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child." (§ 361.5, subd. (f), italics added; see *J.N.*, at p. 457.) Subdivision (f) "giv[es] the juvenile court discretion to permit or deny visitation when reunification services are not ordered, unless of course it finds that visitation would be detrimental to the child, in which case it must deny visitation." (*J.N.*, at p. 458.) The permissive language of the statute reflects that visitation is not integral to the overall plan for the children when a parent does not receive reunification services. (*Id.* at pp. 458-459.)

Section 361.5, subdivision (f) "does not dictate a particular standard the juvenile court must apply when exercising its discretion to permit or deny visitation," but the best interest of the child "is certainly a factor the court can look to in exercising its discretion." (*J.N.*, *supra*, 138 Cal.App.4th at p. 459.) We review the court's decision for abuse of discretion and ask whether the court exceeded the bounds of reason by making an arbitrary, capricious, or patently absurd decision. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *J.N.*, at p. 459.)

Here, the juvenile court found it was not in the children's best interests to allow visitation and that visitation was detrimental. As father points out, the court stated that it

17

was "going to confirm the detriment finding," when it denied visitation. Although it is not clear if it was referring to a prior detriment finding, or what finding that was, we nonetheless conclude the court properly denied visitation. Father accepted little to no responsibility for his actions. The evidence showed that when A.A. was asked if she wanted to visit father, she just said, "Daddy hurt sister and me," and she specifically expressed that she was scared of him. Moreover, the social worker opined that based on the severity of the allegations, the children's continued disclosures, and the concern for their emotional well-being, visits between the children and father would be detrimental. The court followed the social worker's recommendation and found detriment. In doing so, it specified that it had sustained true findings of sexual abuse as to both children, that they were young and could not "possibly know how to process that information," that they were displaying behaviors consistent with sexual trauma, and that their sibling had apparently experienced similar trauma and was continuing to display sexual behavior.

We conclude that the evidence supported the court's finding that visitation with father would be detrimental to the children and was not in their best interests. Therefore, the court properly denied visitation. (§ 361.5, subd. (f); *J.N.*, *supra*, 138 Cal.App.4th at pp. 458-459.)

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                            J.

We concur:

CODRINGTON _____
          Acting P. J.

SLOUGH _____
                    J.