Filed 12/5/22 In re J.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | C095222 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20200000421) |
| Plaintiff and Respondent, | |
| v. | |
| L.G., | |
| Defendant and Appellant. | |

Mother L.G. appeals from the juvenile court's September 23, 2021, order denying her reunification services and continuing the detention of minor J.G. (Welf. & Inst. Code, § 361.5, subd. (b)(6); statutory section citations that follow are found in the Welfare and Institutions Code unless otherwise stated.) Mother also argues the San

1

Joaquin County Human Services Agency (Agency) failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) We affirm the judgment (orders).

## FACTS AND HISTORY OF THE PROCEEDINGS

### Initial detention and jurisdiction

In November 2020, the Agency filed a section 300 petition on behalf of the then 10-year-old minor and her six half siblings, alleging: (1) mother used excessive corporal punishment; (2) mother's boyfriend physically abused minor; (3) mother engaged in relationships that involved domestic violence; (4) mother had a criminal history (including felony convictions related to burglary, theft, and driving under the influence); and (5) mother physically abused minor. (§ 300, subds. (b)(1), (c), (j).)

We note that minor's half siblings are not parties to this appeal. We discuss them only as they are pertinent to the issues in this appeal.

The petition further alleged that minor's father C.G. (father) was aware of the domestic violence between mother and her current boyfriend, but father was only able to obtain joint custody of minor. Father, who is not a party to this appeal, also had a criminal history, including two misdemeanor convictions for domestic violence. Father was the only father of the seven children who was not absent.

The minor was detained and placed with paternal grandmother.

The November 2020 detention report noted that minor and her half siblings said mother used a belt to discipline them. They also said mother's boyfriend also used a "pressure hold" or a belt to discipline them. Mother denied that either she or her boyfriend abused the children. Meanwhile, father reported that in May 2019, minor had asked him to pick her up because she "could not take all the fighting" between mother and her then-boyfriend. Father then filed for full custody of minor, but the court awarded only joint custody. The report also noted that in November 2020, police stopped a car in

2

which mother was a passenger and found a gun and ammunition. Mother later told the police she had purchased the gun, even though she was prohibited from possessing firearms due to a felony conviction.

Later that month, the court ordered supervised visits for mother and father but gave the social worker the authority to lift the supervision.

In December 2020, father submitted to jurisdiction and the court found the petition's allegations as to father to be true.

During a March 2021 contested jurisdiction hearing, the court heard testimony from mother and then sustained the petition, which had been amended as to minor to include only allegations under section 300, subdivisions (b) and (j). The court ordered supervised visits for mother.

Disposition

In the April 2021 disposition report, the social worker recommended reunification services for father but none for mother, pursuant to section 361.5, subdivision (b)(6). The children reported that mother had used a belt to discipline minor and her half siblings, and once struck one of the children in the face with the belt hard enough to leave a mark. Mother also had struck another one of the children twice with a closed fist; one time hard enough to cause his nose to bleed. One of the half siblings reported mother hit him with a metal stick. The children said mother left marks and bruises on them when she hit them. Mother's boyfriend also grabbed the children and squeezed them to discipline them.

The children had witnessed mother and her boyfriend physically disciplining the other children. The children also suffered emotional trauma from these repeated incidents, with two of minor's half siblings making suicidal threats early in the dependency case. In all, the children considered their home environment with mother to be "very chaotic," but the children were now doing well after living in stable

3

environments. Mother continued to say the children were lying, and the social worker opined that she lacked insight into the situation, despite receiving services. Mother had completed an eight-week parenting course in March 2021 and had participated in seven individual counseling sessions. The social worker opined that it was unlikely that mother could successfully reunify with the children, and it would not be in the children's best interests to offer her reunification services.

Father had also participated in services, completing a parenting class in March 2021 and participating in five individual counseling sessions. The social worker recommended against returning minor to father, since he had not yet completed domestic violence classes.

Mother generally visited with the children four times a week, including two in-person visits and two video visits. Mother often forgot about the video visits or was late, and she was often distracted. The children appeared uninterested during the in-person visits, with minor often on her phone. Mother often focused all of her attention on minor's youngest half sibling. Minor also had separate supervised visits with father once a week, and they were going well.

Minor remained placed with paternal grandmother. Although she was unsure where she wanted to live, her current placement was going "very well." The social worker opined minor was not adoptable due to her age and recommended guardianship for paternal grandmother.

The court held a contested disposition hearing in June 2021. Mother testified her criminal case had been dismissed. She admitted that she had given her children "whoopins" with a belt and her hand, mostly on their buttocks and hands. She typically hit them three times. She also once hit one of the children in the nose with a closed fist. She had never left a bruise on the children or made any of them bleed, and any bruises were because her children were "clumsy" and liked to climb on trees, especially the boys. Instead, she mostly yelled at the children. Her ex-boyfriend (who she broke up with in

2019) had restrained the children when they were acting out, but she did not think he did anything improper. Mother said that she did not need to ever discipline minor because she never did anything wrong.

Mother also admitted that the children had witnessed domestic violence in the home. One time, her then-boyfriend had hit her and tried to stab her with a screwdriver. Mother testified she had previously participated in counseling in 2018 due to domestic violence.

Mother testified she found her current counseling helpful. They talked about domestic violence and accepting responsibility for the emotional trauma her children had experienced. She thought she could learn more with continued counseling. She also had learned a lot with the parenting class, including how to keep her composure and not get angry.

The court continued the matter to September 2021. Mother failed a court-ordered drug test in August 2021 and tested positive for alcohol and methamphetamine. Mother admitted to using alcohol but denied ever using methamphetamine. She suggested the positive test might have been due to the medication she was required to take to treat her multiple sclerosis. She was willing to participate in alcohol treatment. A dependency drug court case manager opined that a subsequent lab analysis confirmed that the test results were not a false positive.

The social worker testified that, in her opinion, it was not in the best interest of minor or her half siblings to reunify with mother. She based this opinion not on mother's history of engaging in relationships with domestic violence, but rather on mother's "failure to respond to services in order to create a more protective environment for her children." In addition, mother had a total of 33 referrals to child protective services, although this was the first dependency case. Also, mother had missed between eight and 10 visits since July 2021. The social worker recommended a referral to dependency drug court in the event the court ordered reunification services.

After hearing oral argument, the court adjudged minor (and her half siblings) to be dependent children of the court and ordered no reunification services for mother because it was not in their best interest. (§ 361.5, subd. (b)(6).) The court noted that there was sufficient evidence to establish severe physical harm since mother had used a belt, her hands, a metal rod, and a wooden spoon to hit the children on multiple occasions over a period of time. This habit of physical discipline made the court question whether mother could change, especially since she also continued to engage in relationships that involved domestic violence. Mother's most recent boyfriend had also been physically violent with the children, but mother did nothing to protect them. She still refused to accept any responsibility for the abuse. Although mother loved her children, they were at risk if they were returned to mother. Given her extensive history with child protective services, mother had failed to establish that she could make sufficient changes within the statutory timeframe.

In an October 2021 status report, the Agency recommended continuing reunification services for father, since he was entitled to 12 months of services. Still, the "prognosis" that father would reunite with minor was "very poor." Although father had been visiting regularly with minor, he was currently unable to do so because he was incarcerated on a domestic violence charge. Meanwhile, mother continued visiting with minor regularly, and minor enjoyed the visits. Minor remained placed with paternal grandmother, and she was doing well. The two were very bonded, and paternal grandmother was committed to providing minor with permanency via a legal guardianship. During the October 2021 status hearing, the court continued reunification services for father and set a review hearing for minor in December 2021.

Mother timely appealed the court's September 2021 orders.

DISCUSSION

I

*Bypassing Services*

Mother argues the juvenile court erred in bypassing her for services under section 361.5, subdivision (b)(6) because the evidence was insufficient that either minor or any of her half siblings suffered severe physical harm. Mother argues that none of the children required medical care or suffered any permanent physical disfigurement or disability. In the alternative, mother contends the juvenile court abused its discretion in finding that reunification services for her were not in minor's best interest. Mother argues her ongoing visits with minor would benefit from reunification services, especially since minor's permanent plan is guardianship, and that minor did not suffer greatly from mother's physical discipline of the children. Mother further notes she had been in special education during her school years and argues the Agency failed to provide services that addressed her disabilities. In addition, she argues, she would benefit from substance abuse services. We find no merit in mother's contentions.

When a child is removed from the parent's home, reunification services may be offered to the parent " 'in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]' [Citations.] Section 361.5, subdivision (b) sets forth certain exceptions — also called reunification bypass provisions — to this 'general mandate of providing reunification services.' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

Subdivision (b)(6) of section 361.5 allows the denial of reunification services where the juvenile court finds by clear and convincing evidence that (1) the child was adjudicated a dependent pursuant to any subdivision of section 300 as a result of severe physical harm to the child or a half sibling caused by a parent and (2) it would not benefit

7

the child to pursue reunification services with the parent. As relevant here, "severe physical harm" may be based on, but is not limited to, "deliberate and serious injury inflicted to or on a child's body or the body of . . . [a] half sibling . . . by an act or omission of the parent or guardian; . . . or any other torturous act or omission that would be reasonably understood to cause serious emotional damage." (§ 361.5, subd. (b)(6)(C).)

If the juvenile court finds the bypass provision applies, it shall not order reunification services for the parent unless it finds by clear and convincing evidence that reunification is in the best interest of the child. (§ 361.5, subd. (c)(2).) The parent bears the burden of proving that reunification would serve the child's best interests. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)

We review the juvenile court's findings under section 361.5 for substantial evidence. (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164.) We presume "in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) We are mindful of the heightened standard required for our review. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 997 ["When reviewing a finding made pursuant to the clear and convincing standard of proof, an appellate court must attune its review for substantial evidence to the heightened degree of certainty required by this standard"], *id.* at p. 1009 ["the question before a court reviewing a finding that a fact has been proved by clear and convincing evidence . . . is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof"].)

Here, minor and her half siblings repeatedly said that mother deliberately hit them with a belt, wooden spoon, and metal rod when she was disciplining them. She sometimes hit them with these objects in the face, leaving bruises and marks on them. She also punched one of the children in the face hard enough to cause his nose to bleed.

8

The children witnessed these incidents and suffered emotional trauma as a result, with two of minor's half siblings threatening suicide early in the dependency case. The evidence indicated the children, including minor, were doing better now that they were living in stable environments. Although the minors might not have been permanently disabled or required medical care due to mother's repeated violent behavior, mother points to no authority requiring such a narrow and limited interpretation of "severe physical harm." Indeed, the evidence here points to a pattern of ongoing physical abuse that affected the children physically and emotionally. Under the circumstances, we conclude substantial evidence supports the juvenile court's determination that mother had inflicted severe physical harm on the children.

We similarly conclude substantial evidence supports the juvenile court's finding that it would not benefit minor to pursue reunification services with mother. In making such a determination, section 361.5 specifies that the juvenile court can consider "any information it deems relevant," including: (1) the specific act of severe physical harm inflicted on the child or the child's half sibling; (2) the circumstances under which the harm was inflicted on the child or a half sibling; (3) the severity of the emotional trauma suffered by the child or a half sibling; (4) any history of abuse of other children by the offending parent; (5) the likelihood that the child may be safely returned to the care of the offending parent within 12 months with no continuing supervision; and (6) whether or not the child desires to be reunified with the offending parent. (§ 361.5, subd. (i).)

As previously noted, the evidence here established that mother repeatedly inflicted severe physical harm on the children, leaving marks, bruises, and a bloody nose. This ongoing violent behavior affected the children emotionally, and a half sibling's emotional trauma is a relevant consideration for the court, especially where two of the half siblings threatened suicide. Although this was the first dependency case involving mother's children, there had been 33 referrals to child protective services. Moreover, despite individual counseling and a parenting course, mother continued to exhibit a lack of

9

insight into the situation, describing the physical abuse as discipline and accusing the children of lying about it. The minor was doing well in her placement with paternal grandmother and was unsure where she wanted to live. Given the extent of mother's violent behavior, its impact on the children, and her continued lack of insight, we find no merit in mother's challenge to the juvenile court's order to bypass mother for reunification services under section 361.5, subdivision (b)(6).

## II

### *The Indian Child Welfare Act*

Mother contends the Agency and the juvenile court failed to comply with the inquiry and notice requirements of the ICWA. We reject this contention because the ICWA issue is premature.

### Background

In November 2020, mother and father both signed an ICWA-20 form stating none of the circumstances existed that would suggest either the parent or minor had any known Indian ancestry. In addition, the social worker spoke with both parents about possible Indian heritage, and the court also asked both parents about the issue during the November 2020 hearing. The court has not yet made a finding as to whether ICWA applies to the proceedings.

### Analysis

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. (See 25 U.S.C. § 1902; *In re Levi U*. (2000) 78 Cal.App.4th 191, 195-196.) The juvenile court and the county welfare department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the

10

proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

As we recently explained, where the juvenile court has not yet made a final ICWA ruling at or before the challenged dispositional hearing as to whether the ICWA applied to the proceedings, a parent's challenge is premature. (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461.) Because "any perceived deficiencies with ICWA inquiry and noticing may still be resolved during the normal course of the ongoing dependency proceedings," we reject mother's invitation to assess their current adequacy. (*Ibid.*; see also *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [ICWA claim was premature where no final ICWA ruling made at dispositional hearing].)

DISPOSITION

The juvenile court's orders are affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

BOULWARE EURIE, J.

11